**Barbara Ann EMRI, Plaintiff,**

v.

**EVESHAM TOWNSHIP BOARD OF EDUCATION, John F. Bigley, John G. Dyer, III, Frank B. Sama, Deborah Iepson, Jan Ritter, Sherrill Huston, John Hampshire, Carol Wagner, April Peppard, Denise Jiampetti, Robin Johnston, Lisa Venturi, Iris Auerbach, Angela Denniston, Irene Romanelli, and John Does 1–99, Defendants.**

Civil No. 02–4069 (JBS).

United States District Court, D. New Jersey.

July 29, 2004.

## OPINION

SIMANDLE, District Judge.

Plaintiff, Barbara Ann Emri, a tenured teacher in Evesham Township, taught in Evesham Township's Demasi Middle School from the fall of 1998 until March 17, 2000. During her time at the Middle School, the administration received repeated complaints from parents, students, and teachers that Ms. Emri was rude to the students in her classes, including special needs students, made racist remarks while teaching, was insensitive to parental concerns, and sought to intimidate her colleagues from complaining about her conduct. As a result, on March 17, 2000, the Superintendent of Schools suspended Ms. Emri and notified her that the Board of Education intended to initiate tenure dismissal charges.

A tenure dismissal charge for "conduct unbecoming · a teacher" was filed against Ms. Emri on May 12, 2000, which included fifty-six incidents for which the Board believed Ms. Emri had conducted herself in a manner "unbecoming a teacher." The charge has been litigated before the Board of Education, the Commissioner of Education, the Office of Administrative Law, the State Board of Education, and finally, before the Superior Court of New Jersey, Appellate Division in an appeal filed on January 13, 2004. Presently, it is undisputed that Ms. Emri conducted herself in a manner unbecoming a teacher during twenty-one of the fifty-six initially alleged incidents, as the sole issue pending on appeal relates to the appropriate penalty for her conduct on those occasions.

Meanwhile, Ms. Emri filed the present suit on March 15, 2002, in New Jersey Superior Court, Burlington County, alleging that the defendants, all employees of the Evesham Township School District,[1]

Mark J. Molz, Esquire, Stephen Cristal, Esquire, Offices of Mark J. Molz, Hainesport, NJ, for Plaintiff.

William S. Donio, Esquire, Cooper Levenson April Niedelman & Wagenheim, Atlantic City, NJ, for Defendants.

---

1. The defendants are the Evesham Township Board of Education, Superintendent John F. Bigley, Human Resources Manager John G. Dyer III, Principal Frank B. Sama, Vice–Principal Deborah Iepson, sixth grade teachers Jan Ritter, Sherrill Huston, John Hampshire,

violated her Fourteenth Amendment right to due process, and her First Amendment right to free speech, in violation of 42 U.S.C. § 1983, by pursuing the tenure charges, and are also "liable to Plaintiff for Intentional Infliction of Emotional Distress, Interference with Contract & Economic Opportunity, Defamation and False Light, Invasion of Privacy, Abuse of Process,[2] and for any other causes of action allowed by law." (Complaint ¶ 73.)

The defendants removed the action to federal court on August 21, 2002, and filed the present motion for summary judgment on June 18, 2004. [Docket Item 15-1.] The defendants seek summary judgment in their favor on all charges; the plaintiff only opposes summary judgment as to the due process and malicious prosecution claims. The Court heard the arguments of counsel on July 21, 2004, and, for the reasons stated herein, will grant summary judgment in favor of the defendants and will dismiss plaintiff's complaint with prejudice.

## I. BACKGROUND

In 1994, plaintiff Barbara Ann Emri, then teaching a Fourth Grade class at the Beeler Elementary School, achieved tenure status in the Evesham Township School District. (Undisputed Facts ¶ 2.) She received positive evaluations, maintained a "good rapport with her children,

parents and colleagues," and "showed concern for all students." (Pl.Exs.2, 6, 7.) Ms. Emri was then transferred to teach a Sixth Grade class the Demasi Middle School for the 1998–1999 school year, (Undisputed Facts ¶ 3), where the problems underlying this lawsuit began.

Almost immediately, administrators at the Demasi Middle School had begun receiving complaints about Ms. Emri's treatment of her students. On October 16, 1998, Defendants Frank Sama, School Principal, and Deborah Iepson, School Vice–Principal, met with Ms. Emri about an October 1st complaint that Ms. Emri had been unresponsive and rude to a student's questions and about an October 15th complaint that Ms. Emri had belittled a student's spelling skills in front of her classmates, allegations that Ms. Emri denied. (Undisputed Facts ¶¶ 5–7.) On November 18, 1998, Vice–Principal Iepson met with Ms. Emri again about a complaint that Ms. Emri had taken the coat of a special needs student who had taken another student's pen, and "scream[ed] that [he] needs to learn that he can't have the coat if he takes the pen." (*Id.* ¶¶ 8–12; Donio Cert., Ex. E.) Again, Ms. Emri denied the allegations. (Pl. Facts ¶¶ 9, 11.)

The complaints about Ms. Emri continued and, on January 21, 1999, Principal Sama and Vice–Principal Iepson met with

Carol Wagner, and April Peppard, kindergarten teacher Denise Jiampetti, fifth grade teacher Robin Johnston, elementary school teacher Lisa Venturi, middle school computer teacher Iris Auerbach, middle school guidance counselor Angela Denniston, and seventh grade teacher Iris Auerbach. (Complaint ¶¶ 1–16.)

2. Defendants pointed out in their motion papers that "Ms. Emri's claim is, in fact, a claim for malicious prosecution," as a cause of action for malicious prosecution is based on an allegation that process was used "for its ostensible purpose, although without reasonable

or probable cause," while a cause of action for abuse of process is based on an allegation that process was used "in a manner not contemplated by law." (Def. Br. at 27 (citing cases)). Plaintiff agrees that her intent was to file a claim for malicious prosecution, based on the initiation of the administrative hearing, and seeks a determination of such a claim. (Pl. Br. at 13.) The parties argued the merits of the malicious prosecution claim at oral argument. There is no evidence of abuse of process in this matter and, for the reasons stated in section II.B.2 *infra*, there is also no evidence of malicious prosecution.

Ms. Emri and a teachers' union representative about ten additional parent complaints, involving allegations that she had an inappropriate demeanor toward children, that she was abrupt, argumentative, and unreceptive to parental concerns, and that she sought retribution against any student who complained about her. (Pl. Ex. 11; Donio Cert., Exs. F, G.) These four individuals met again in February, March, and April 1999, to "discuss ways Ms. Emri might change matters for the better." (*Id.*, Exs. H, I.)

The administration continued to receive complaints about Ms. Emri. Vice–Principal Iepson, on Ms. Emri's June 21, 1999 performance evaluation, wrote that Ms. Emri "has experienced difficulty in attempting to maintain a positive and comfortable classroom environment for some of her students," that "[t]here are documented incidents when [Ms. Emri] has made parents and students feel uncomfortable about their concerns," and that she "tends to experience difficulty with the same students once a concern has been raised." (Pl.Ex.13.) Ms. Emri opposed the review and stated that she had been "unfairly and incorrectly accused" as the complaints about her conduct were "not true and blown out of proportion by students and parents." (*Id.*)

The administration continued to document complaints about Ms. Emri. During the spring of 1999, for example, Vice Principal Iepson reported that when she asked Ms. Emri about a certain student, she responded that "he is just your typical nigger." (Donio Cert., Ex. L at 5.) Then, in the fall of 1999, students complained that, when studying a book on racial tolerance entitled *The Cay*, Ms. Emri told them that she once had taught African American students who "seemed fascinated with the texture of [her] hair" and acted like "little monkeys picking their heads." (*Id.*)

The complaints continued and, by early 2000, nine children had been removed from her classes because they "become so intimidated by [Ms. Emri] that they feared coming to school" and would sometimes feign illness so that they would not need to attend her class. (Donio Cert., Exs. L, O.)

As a result, on March 17, 2000, Superintendent Bigley met with Ms. Emri and informed her that she was being suspended with pay as he intended to file tenure dismissal charges against her. (*Id.*, Exs. J, K, L.) At the meeting Mr. Bigley read Ms. Emri the following statement:

The purpose of this meeting is very serious. Effective immediately you are suspended, with pay, from your teaching duties. You have a letter that details the reasons for this action. Many of your colleagues have stepped forward to describe and express concern regarding your treatment of students. More than 30 students/parents have also expressed concerns.

I intend to file tenure dismissal charges with the Board Secretary by next Friday, March 24, 2000. Between now and then you will be given the opportunity to resign your position. It is my hope that this will occur.

You will be escorted back to your classroom to remove your personal items from the room. You are to return your keys and roll book. You are to have no contact with any of the involved students, staff, parents or administrators of the district. You are not permitted in or around any of the district facilities.

I regret having to take this action, but the facts made it necessary for the best interest of the children, staff and school district.

(*Id.*, Ex. K.) Mr. Bigley provided Ms. Emri with a fifteen-page single-spaced letter detailing the complaints received about her between November 1998 and March 14,

2000, which caused the administration to believe that she had "consistently and repeatedly mistreated children" and should be removed from her position. (*Id.,* Ex. L.) Ms. Emri was then escorted to her classroom and from the school premises. (Undisputed Facts ¶ 29.) She continued to receive full pay and benefits during this initial period of suspension. (Donio Cert., Ex. K.)

Ms. Emri did not file a letter of resignation, so the Board of Education filed tenure dismissal charges against her on May 12, 2000 which detailed fifty-six counts of "conduct unbecoming a teacher." (*Id.,* Ex. M.) The charges were separated into categories of "inappropriate behavior towards students," "inappropriate treatment of colleagues," and "insubordination to administrators." (*Id.*) Ms. Emri was served a notice of the tenure charges, a written statement of the charges, and a copy of the verified statements of evidence on which the charges were based. (*Id.*) The verified statements of evidence were provided by Principal Sama, Vice–Principal Iepson, Superintendent Bigley, and teachers Iris Auerbach, Irene Romanelli, Lisa Venturi, Robin Johnston, and Denise Jiampetti, all defendants in this action. (*Id.*) Ms. Emri was provided fifteen days to file a written statement of her position and evidence in her defense, and was informed that the matter would be considered at a special meeting convened on May 30, 2000. (*Id.*)

In response to the charges, Ms. Emri sent a letter to the Board on May 22, 2000 stating that:

> Needless to say, Ms. Emri denies each and every one of the charges set forth in the "complaint" prepared by the Board's lawyer. There appears to be no purpose in laying out Ms. Emri's defense in detail at this juncture since it is painfully obvious that the Board and its administration have already determined to certify charges against her. . . .

> Fortunately, Ms. Emri's fate will not lie in the hands of this Board. . . . The case will be heard by an administrative law judge and any determination reviewed by the Commissioner of Education. Each and every one of Ms. Emri's accusers will be required to testify in the tenure proceeding and Ms. Emri will have the opportunity to confront and cross-examine them. Ms. Emri looks forward to this opportunity. . . .

> Know this—Ms. Emri intends to vigorously defend herself against these unfounded charges and, in the process, will hold each and every one of her accusers accountable for their statements and actions.

(Donio Cert., Ex. N.)

The special Board meeting was held on May 30, 2000, and the Board of Education found probable cause that Ms. Emri had conducted herself in a manner unbecoming a public school teacher during all fifty-six incidents charged. (Undisputed Facts ¶ 37; Donio Cert., Ex. P at 1.) The Board forwarded the charges to the Commissioner of Education, and then, pursuant to N.J.S.A. 18A:6–14 suspended Ms. Emri without pay for 120 calendar days. (Undisputed Facts ¶¶ 38–39.) When the administrative proceeding was not completed within 120 calendar days of the Board's certification, the Board of Education, pursuant to N.J.S.A. 18A:6–14, continued Ms. Emri's suspension, but reinstated her full pay and benefits on the 121st day until the completion of the administrative appeal process. (*Id.* ¶ 39.)

Upon receipt and review of the matter, the Commissioner of Education forwarded the case on June 19, 2000 to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ); the case was assigned to ALJ Beatrice S. Tylutki. (*Id.* ¶ 40.) The hearing began on October 11, 2000. (Donio Cert., Ex. P at

3.) The Board's presentation lasted for twelve scheduled hearing days over the course of several months; during this presentation, the Board withdrew twenty-two of the fifty-six charges. (*Id.* at 2.) Then, after the Board's presentation, Ms. Emri filed a motion to dismiss the remaining counts, arguing that the Board had not established that each established conduct unbecoming a teacher. (*Id.*) On September 28, 2001, ALJ Tylutki issued an order dismissing thirteen additional counts for not rising to the level of conduct unbecoming a teacher. (*Id.*) The hearing resumed on October 24, 2001 for plaintiff's presentation and continued for an additional seven hearing days until the record was closed on January 25, 2002. (*Id.* at 2–3.)

ALJ Tylutki then issued a comprehensive seventy-page decision on August 30, 2002, finding that the Board had established that Ms. Emri conducted herself in a manner unbecoming of a public school teacher on all twenty-one of the remaining counts. Specifically, she found that the Board had met is burden on ten counts "show[ing] a pattern of inappropriate behavior during a three-school-year period . . . toward students who questioned her authority, were disruptive or did not follow the rules," six counts "show[ing] a pattern of insensitivity to the special needs of special education students or other students in the inclusion classes," three counts "show[ing] that Emri attempted to discourage students from complaining about her," two counts "show[ing] that Emri used the word 'nigger' " and one count "show[ing] that Emri compared African American girls to monkeys." (Donio Cert., Ex. P at 66.) ALJ Tylutki recommended as discipline forfeiture of the 120 days' salary that was withheld during her suspension, a suspension without pay for the 2002–2003 school year, a two-step lowering of salary upon her return the following school year, and mandatory attendance of classes regarding anger management, han-

dling of disruptive students, and techniques for teaching special education students in inclusion classes. (*Id.* at 68–69.)

The Commissioner of Education issued his final decision on October 21, 2002, finding that the Board had sustained its burden for the 21 counts, but modifying the penalty to require a permanent one-step reduction in salary and forfeiture of the 120 days' salary previously withheld and forfeiture of an additional six months' salary. (Donio Cert., Ex. Q.)

The parties cross-appealed to the State Board of Education, with the Board arguing that Ms. Emri's dismissal would be the appropriate remedy, and with Ms. Emri arguing that the charges should be dismissed. (*Id.*, Ex. R.) In a December 3, 2003 Opinion, the State Board of Education affirmed the decision of the Commissioner, adding only a requirement that Ms. Emri attend the mandatory classes initially recommended. (*Id.*) Ms. Emri filed a notice of appeal of the State Board's decision to the Superior Court of New Jersey, Appellate Division, on January 13, 2004, arguing only that the penalty should not include withholding of salary increments during the period of suspension. (Donio Cert., Ex. S.) This entire administrative procedure received attention from the press. (Pl.Ex.15.)

The present suit was initiated on March 15, 2002, after the administrative record had been closed, but before ALJ Tylutki issued his initial August 30, 2002 decision. (*Id.*, Ex. A.) Ms. Emri filed the suit in New Jersey Superior Court, Burlington County, alleging that the defendants violated her Fourteenth Amendment right to due process, and her First Amendment right to free speech, in violation of 42 U.S.C. § 1983, by pursuing the tenure charges, and that the defendants are also "liable to Plaintiff for Intentional Infliction of Emotional Distress, Interference with Contract & Economic Opportunity, Defamation and

False Light, Invasion of Privacy, Abuse of Process, and for any other causes of action allowed by law." (Complaint ¶ 73.) The defendants removed the action to federal court on August 21, 2002, and filed the present motion for summary judgment on June 18, 2004. (Donio Cert., Ex. T.)

The Court heard the arguments of counsel on July 21, 2004, at which time plaintiff's counsel stated that plaintiff does not oppose summary judgment as to the First Amendment,[3] intentional infliction of emotional distress,[4] tortious interference with contract and economic opportunity,[5] defamation,[6] and false light invasion of privacy[7] claims. Summary judgment for defendants upon these claims is appropriate, and will be granted in the accompanying

3. Plaintiff asserted that her First Amendment right to free speech was violated when charges were asserted against her for her teaching of the book, *The Cay*. However, it is undisputed, as established by the final administrative decision, that she, in fact, made derogatory racial remarks when teaching *The Cay*, and that it was the remarks, and not the teaching of the book, that was the basis for the tenure dismissal charge. The First Amendment protects a teacher's speech about matters of public concern, *Pickering v. Board of Education*, 391 U.S. 563, 574–75, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), which these racially derogatory statements clearly were not.

4. A claim for intentional infliction of emotional distress requires proof of intentional and outrageous conduct that proximately caused emotional distress of a severity that a reasonable person could not be expected to endure. *See Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 366–67, 544 A.2d 857 (1988). Here, Ms. Emri testified that she has not suffered severe emotional distress, though her blood pressure has been elevated, (Donio Cert., Ex. D at 333:20–334:5), and has not pointed to any evidence of intentional and outrageous conduct on the part of the defendants in bringing the tenure dismissal charges, especially where the defendants have obtained findings in their favor on twenty-one of the charges they asserted against plaintiff.

5. A claim for interference with contract or prospective economic advantage requires proof that plaintiff had a protectable contractual right or a reasonable expectation of prospective economic advantage, that defendants interfered with that right intentionally and with malice, and that plaintiff suffered damages. *See Printing Mart–Morristown v. Sharp Electronics*, 116 N.J. 739, 751, 563 A.2d 31 (1989). Ms. Emri asserts that defendants interfered with her tenure rights by asserting false tenure dismissal charges against her. This claim cannot succeed because the undisputed facts, as decided with finality by the State Board of Education, establish that the defendants had probable cause, and thus justification, to suspend plaintiff for conduct unbecoming a teacher. Plaintiff has shown no evidence of malice to contradict these findings.

6. A claim for defamation requires proof that the defendant made a false statement of facts concerning the plaintiff to someone other than the plaintiff, and did so with actual malice. *See Rocci v. Ecole Secondaire*, 165 N.J. 149, 152, 755 A.2d 583 (2000). Plaintiff's defamation claim is based on the tenure dismissal charges which, she asserts, were false and were disclosed to the press for dissemination. This claim also cannot succeed, especially because there is no proof of actual malice, where twenty-one of the charges were backed by probable cause, and where tenure dismissal charges are "public records" within the meaning of New Jersey's Right–to–Know Law, N.J.S.A. 47:1A–1, et. seq., *see Williams v. Board of Educ. of Atlantic City Public Schools*, 329 N.J.Super. 308, 318, 747 A.2d 809 (App.Div.2000).

7. A claim for false light invasion of privacy requires proof that the defendants gave publicity to a matter concerning the plaintiff that placed the plaintiff in a false light that would be highly offensive to a reasonable person, and the defendant had knowledge of, or acted with reckless disregard of, the falsity of the matter. *See Romaine v. Kallinger*, 109 N.J. 282, 294, 537 A.2d 284 (1988). Here, there is no proof that the defendants acted with knowledge of the falsity of their charge of "conduct unbecoming a teacher" where twenty-one incidents of "conduct unbecoming a teacher" were conclusively found after a hearing and appeal.

order. Plaintiff filed opposition to summary judgment on the due process and malicious prosecution claims, which the Court has considered. For the reasons stated herein, the Court will grant summary judgment in favor of the defendants on both claims and will dismiss this suit with prejudice.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).[8]

### B. Analysis

#### 1. Procedural Due Process Claim

 Defendants argue that there is no reasonable factfinder could conclude that they violated plaintiff's procedural due process rights when they brought the tenure charges against her.[9] Plaintiff, though, asserts that she was deprived of her property interest in continued pay and benefits as a tenured teacher because (1) her suspension on March 17, 2000 was without prior notice or an opportunity to be heard, and (2) the administrative proceeding lasted 880 days before the Commissioner of Education issued his decision. (Pl. Br. at 10, 12.)[10]

**8.** The moving party always bears the initial burden of showing no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. The non-moving party "may not rest upon the mere allegations or denials of" its pleading to show a genuine issue exists and must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Fed.R.Civ.P. 56(e); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985).

**9.** In considering plaintiff's claim, the Court notes that her action must relate to her right to procedural due process, and not to substantive due process, because plaintiff cannot state a claim for a substantive due process violation. The Third Circuit has explained that some "state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause," but "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Nicholas v. Pennsylvania State University,* 227 F.3d 133, 140 (3d Cir.2000). The interest in tenured public employment is not one of the "fundamental property interest entitled to substantive due process protection." *Id.* at 142. Therefore, so long as the state satisfies the requirements of procedural due process, the government action will be upheld. *Id.*

**10.** Plaintiff also seems to imply that she should be granted relief under the due process clause because the "administrative hearing was splashed all over the Burlington County newspapers [and] Ms. Emri was scorned and berated in the press." (Pl. Br. at 8.) Under New Jersey law, though, tenure charge documents, which are filed with the Board's secretary pursuant to N.J.S.A. 18A:6–11, and the proceedings of the Office of Administrative Law, are "public records" within the meaning of New Jersey's Right-to-Know Law, N.J.S.A. 47:1A–1, et. seq. *See Williams,*

■ 42 U.S.C. § 1983 provides a remedy for individuals whose Constitutional rights have been violated by persons acting under color of state law. *See, e.g., McCullough v. City of Atlantic City,* 137 F.Supp.2d 557, 564 (D.N.J.2001) (citing 42 U.S.C. § 1983). To establish a cause of action under § 1983, a plaintiff must show (1) there was a violation of a right secured by the Constitution and laws of the United States, and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citations omitted). For purposes of this motion, the defendants have not disputed their status as persons acting under color of state law. They have, though, argued that there is no question that they did not deprive plaintiff of her Fourteenth Amendment right to due process.

The Fourteenth Amendment requires procedural due process prior to the deprivation of a property interest, such as plaintiff's interest in her tenure status. *See Nicholas v. Pennsylvania State University,* 227 F.3d 133, 142 (3d Cir.2000). Procedural due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner" that is "appropriate to the nature of the case." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Plaintiff asserts that she was not provided procedural due process because she was not provided notice and an opportunity to be heard prior to her initial suspension with pay on March 17, 2000. (Pl. Br. at 10.) In support of her argument, she cites *Jefferson v. Jefferson County Public School System,* where the Sixth Circuit

329 N.J.Super. at 318, 747 A.2d 809. Plaintiff has not pointed to any evidence, and has not argued, that disclosures in this matter were

"assume[d] for purposes of this appeal that the five-day suspension without pay and coerced retirement constitute the deprivation of a property interest requiring a pre-loss hearing, which requires an opportunity to respond before any deprivation, as well as post-deprivation process where necessary." *Jefferson,* 360 F.3d 583, 587 (6th Cir.2004).

Plaintiff's reliance on *Jefferson* is misplaced. First, the *Jefferson* court confronted a situation where the teacher was immediately suspended without pay. Here, in contrast, plaintiff was suspended *with* pay and was provided notice that dismissal charges would be brought against her. Ms. Emri was not deprived of any pay or benefits associated with her tenured position until after the May 30, 2000 meeting of the Board of Education, for which she had been provided notice of the fifty-six charges, a copy of the evidence supporting them, and time to present her own position in writing and orally, and to provide evidence. It was only after consideration of the positions of the parties and the evidence, of which plaintiff provided nothing but her statement that she would litigate the issue and hold her accusers accountable, that the Board of Education suspended plaintiff for 120 days without pay. Prior to that date, she was not deprived of any property interest for purposes of the due process clause. *See Edwards v. California University of Pennsylvania,* 156 F.3d 488, 492 (3d Cir. 1998) (holding that "temporary removal from class duties ... does not constitute a deprivation of employment" for purposes of procedural due process).

■ Plaintiff, therefore, was provided sufficient pre-deprivation process. Indeed, the Third Circuit has held that

improper or broader than those within the tenure charge documents.

where there are substantial post-deprivation remedies, pre-termination due process only requires notice, explanation of the charges, and an opportunity to respond, all of which this plaintiff was provided. *See McDaniels v. Flick*, 59 F.3d 446, 456 (3d Cir.1995); *see also Jefferson*, 360 F.3d at 587. Here, the post-deprivation procedures afforded by New Jersey law are meaningful and substantial, and plaintiff has made use of them.

The Evesham Township Board of Education complied with New Jersey's Tenure Employee Hearing Law when it provided plaintiff, in writing, charges of her "unbecoming conduct," and underlying statements signed by interested parties, prior to a hearing by the Commissioner of Education. *See* N.J.S.A. 18A:6-10.[11] Indeed, the Board of Education was required by statute to conduct the initial Board hearing, where Ms. Emri declined the opportunity to submit evidence, prior to submitting the charge to the Commissioner for a hearing. *See* N.J.S.A. 18A:6-11.[12] The Evesham Township Board of Education followed the statutory scheme by providing Ms. Emri with "a copy of the charge, a copy of the statement of the evidence, and an opportunity to submit a written statement of position and a written statement of evidence under oath with respect thereto," prior to considering the matter at a special meeting, and voting whether there was "probable cause to credit the evidence in support of the charge and whether such charge, if credited, is sufficient to warrant a dismissal or reduction of salary." *See* N.J.S.A. 18A:6-11. Then, the Board was to forward its "written charge to the commissioner for a hearing pursuant to N.J.S.A. 18A:6-16," which it did. Indeed, plaintiff does not dispute that each of these requirements was met.

11. N.J.S.A. 18A:6-10 provides, in pertinent part:

> No person shall be dismissed or reduced in compensation ... if he is or shall be under tenure of office, position or employment during good behavior and efficiency in the public school system of the state ... except for inefficiency, incapacity, unbecoming conduct, or other just cause, and then only after a hearing held pursuant to this subarticle, by the commissioner, or a person appointed by him to act in his behalf, after a written charge or charges, of the cause or causes of complaint, shall have been preferred against such person, signed by the person or persons making the same, who may or may not be a member or members of a board of education, and filed and proceeded upon as in this subarticle provided.

12. N.J.S.A. 18A:6-11 provides, in pertinent part:

> Any charge made against any employee of a board of education under tenure during good behavior and efficiency shall be filed with the secretary of the board in writing, and a written statement of evidence under oath to support such charge shall be presented to the board. The board of education shall forthwith provide such employee with a copy of the charge, a copy of the statement of the evidence and an opportunity to submit a written statement of position and a written statement of evidence under oath with respect thereto. After consideration of the charge, statement of position and statements of evidence presented to it, the board shall determine by majority vote of its full membership whether there is probable cause to credit the evidence in support of the charge and whether such charge, if credited, is sufficient to warrant a dismissal or reduction of salary. The board of education shall forthwith notify the employee against whom the charge has been made of its determination, personally or by certified mail directed to his last known address. In the event the board finds that such probable cause exists and that the charge, if credited, is sufficient to warrant a dismissal or reduction of salary, then it shall forward such written charge to the commissioner for a hearing pursuant to N.J.S.A. 18A:6-16, together with a certificate of such determination.... The consideration and actions of the board as to any charge shall not take place at a public meeting.

Plaintiff argues, though, that defendants violated N.J.S.A. 18A:6–16 by suspending her prior to forwarding the charges to the Commissioner. (Pl. Br. at 11.) It is clear that the Evesham Board of Education had authority, upon its certification of the charge to the Commissioner, to suspend plaintiff without pay for 120 days. *See* N.J.S.A. 18A:6–14.[13] Prior to that date, plaintiff's suspension was *with* pay and does not provide the basis for a procedural due process claim. *See Edwards*, 156 F.3d at 492. Regardless, the suspension was lawful pursuant to N.J.S.A. 18A:25–6, which provides a school superintendent with authority to suspend teachers under his supervision with the approval of the President of the Board of Education. N.J.S.A. 18A:25–6;[14] *see also* Pl.Ex. 5.[15]

Plaintiff also argues that she was denied procedural due process because the administrative proceeding was not completed within the 120 days of her suspension. She does not dispute that she was returned to full-pay status on the 121st day, in accordance with N.J.S.A. 18A:6–14. There is, however, no requirement that the administrative process be completed within 120 days, and this forms no basis for a procedural due process claim against the defendants. There is no evidence that the defendants sought to lengthen, delay, or obstruct the process in any way. Indeed, the defendants did not conduct the hearings, which were promptly referred to the Office of Administrative Law and convened before an administrative law judge.[16] In-

---

13. N.J.S.A. 18A:6–14 provides, in pertinent part:

Upon certification of any charge to the commissioner, the board may suspend the person against whom such charge is made, with or without pay, but, if the determination of the charge by the Commissioner of Education is not made within 120 calendar days after certification of the charges, excluding all delays which are granted at the request of such person, then the full salary (except for said 120 days) of such person shall be paid beginning on the one hundred twenty-first day until such determination is made. Should the charge be dismissed, the person shall be reinstated immediately with full pay from the first day of such suspension. Should the charge be dismissed and the suspension be continued during an appeal therefrom, then the full pay or salary of such person shall continue until the determination of the appeal. . . .

14. N.J.S.A. 18A:25–6 provides:

The superintendent of schools may, with the approval of the president or presidents of the board or boards employing him, suspend any assistant superintendent, principal or teaching staff member, and shall report such a suspension to the board or boards forthwith. . . .

15. The Board of Education Procedures and Regulations Guide for the 1999–2000 school year provides that:

The Board further recognizes the authority of the Superintendent to suspend a teaching staff member summarily, with the approval of the President of the Board . . . .
(Pl.Ex.5.)

16. The Court notes that there was a delay in the administrative proceeding that resulted from Ms. Emri's request for the production of disciplinary records of students who had complained about her conduct. She sought the documents for her defense, so that she could argue that the same students were disciplined by other teachers, but that tenure dismissal charges had not been brought against the other teachers. (Pl.Exs.18–20.) On December 15, 2000, the Board of Education was instructed to release the records, provided it gave notice of the release to the parents of the students and provided three days to make an objection to their release. (Pl.Ex.19.) The Board gave such notice and received five objections, for which the December 15th order required a hearing. Ms. Emri, on February 9, 2001, then filed a motion for relief in support of litigant's rights seeking an acceleration of the record release. (Pl.Exs.17, 18.) As a result, pursuant to a March 20, 2001 Order, the Board released all of the requested records except for the records of the five students for which objections had been received. (Pl.Ex.20.)

The Court finds that any delay caused by the defendants' failure to immediately release

stead, the proceeding was completed in a timely manner, with charges forwarded to the Commissioner of Education after the May 30, 2000 meeting, a decision by the Commissioner to refer the matter to the Office of Administrative Law pursuant to N.J.S.A. 18A:6–16 [17] on June 19, 2000, a nineteen-day hearing before ALJ Tylutki beginning on October 11, 2000 and ending on October 24, 2001, a decision by ALJ Tylutki on August 30, 2002, a decision by the Commissioner on October 21, 2002, and a decision by the State Board of Education on December 2, 2003. There is no question that plaintiff did not suffer any due process violation caused by any defendant based on the length of this administrative process.

The Court, therefore, finds that plaintiff has failed to point to any evidence from which a reasonable factfinder could conclude that she was deprived of procedural due process in the tenure dismissal proceedings. The Court will grant summary judgment in favor of the defendants on this claim.

### 2. Malicious Prosecution Claim

■ Defendants assert that summary judgment must also be granted on plaintiff's malicious prosecution claim because there is no possibility that the elements for

such a claim have been met. This Court agrees.

To establish a cause of action for malicious prosecution where the underlying "prosecution" involved civil charges, a plaintiff must show:

(1) the action was instituted by the defendant against the plaintiff with malice and without probable cause,

(2) the action terminated favorably to plaintiff, and

(3) the plaintiff suffered a "special grievance."

*Klesh v. Coddington,* 295 N.J.Super. 51, 58, 684 A.2d 530 (Law Div.), aff'd 295 N.J.Super. 1, 684 A.2d 504 (App.Div.1996). The "law does not look with favor upon actions for malicious prosecution" because "people should not be inhibited in seeking redress in the courts." *Penwag Property Co., Inc. v. Landau,* 76 N.J. 595, 597, 388 A.2d 1265 (1978) (quoting *Lind v. Schmid,* 67 N.J. 255, 262, 337 A.2d 365 (1975)).

■ Plaintiff asserts that she has a claim for malicious prosecution here because, of the fifty-six counts that were certified for the Commissioner, twenty-two were withdrawn by defendants and thirteen were dismissed by the ALJ. Therefore, she asserts that this matter "termi-

---

these disciplinary records in no way tends to establish that Ms. Emri was denied procedural due process. The records were not essential to the Board's charges against Ms. Emri, instead being relevant for cross-examination only, and the Board was justified in ensuring that their release was necessary and properly-done prior to disclosing their sensitive information.

**17.** N.J.S.A. 18A:6–16 provides, in pertinent part:

Upon receipt of such a charge ... the commissioner ... shall examine the charges and certification. The individual against whom the charges are certified shall have 15 days to submit a written response to the charges to the commission-

er.... The commissioner shall render a determination on the sufficiency of charges as set forth below within 15 days immediately following the period provided for a written response to the charges.

If, following receipt of the written response to the charges, the commissioner is of the opinion that they are not sufficient to warrant dismissal or reduction in salary of the person charged, he shall dismiss the same and notify said person accordingly. If, however, he shall determine that such charge is sufficient to warrant dismissal or reduction in salary of the person charged, he shall within 10 days of making that determination refer the case to the Office of Administrative Law for further proceedings ....

nated favorably" to her on thirty-five of the fifty-six counts. (Pl. Br. at 14.)

The action instituted against the plaintiff, though, was an action for "conduct unbecoming a teacher," supported by fifty-six incidents during which the defendants believed she had acted inappropriately. In the end, the defendants established, with finality, that she had conducted herself in a manner that was inappropriate for a public school teacher during twenty-one of those incidents. In this way, the action was not "terminated favorably" to the plaintiff; instead, she was found to have conducted herself in a manner unbecoming a teacher. Whether she did so on fifty-six occasions, or twenty-one, is not critical to the end result—Ms. Emri is responsible for conduct that was unbecoming a teacher and deserving of discipline. This finding has been affirmed by the Commissioner of Education and by the State Board of Education, and has not been appealed to the Appellate Division of the Superior Court.[18]

Thus, there is no question that the underlying charge that Ms. Emri conducted herself in a manner unbecoming a teacher did not "terminate favorably" to the plaintiff. Instead, she was found responsible for the most grievous of the charges brought against her, those relating to humiliating and berating students, who often were special needs students, (Counts 1, 3, 5, 8, 22, 23, 25, 31, 34, 35), to making derogatory racial remarks, (Counts 2, 11, 12), and to intimidating students so that they would not complain about her, (Counts 9, 13, 24). Under these circumstances, where plaintiff's conduct on multiple occasions has been found with finality to have been improper, there is simply no evidence that she was maliciously prosecuted for conduct unbecoming a teacher.[19] Therefore, this Court will grant summary judgment in favor of the defendants on the malicious prosecution claim.

## III. CONCLUSION

For the foregoing reasons, this Court will grant summary judgment in favor of the defendants on all counts and will dismiss plaintiff's complaint with prejudice. The accompanying order is entered.

## ORDER

This matter having come before the Court upon the motion of the defendants for summary judgment on all claims contained in the complaint filed by plaintiff Barbara Ann Emri, [Docket Item 15–1]; the Court having considered the parties' written submissions as well as oral arguments made on July 21, 2004; for the reasons expressed in Opinion of today's date;

IT IS this *29th* day of July, 2004, hereby

**ORDERED** that the motion of defendants for summary judgment on all claims in plaintiff's complaint, [Docket Item 15–1] be, and hereby is, *GRANTED;* and

---

18. Plaintiff's January 2004 appeal involves only the remedy for the violations, with arguments relating to the manner in which salary increments are to be calculated. (*See* Donio Cert., Ex. S.)

19. In addition, there is no evidence that the defendants acted with malice, where many of their charges were upheld with finality, or that plaintiff suffered a "special grievance" as a result of the tenure proceeding. To establish a special grievance, a plaintiff must show that an interference with her rights or liberties that is greater than that which generally occurs as a result of civil litigation. *See Brien v. Lomazow,* 227 N.J.Super. 288, 303–04, 547 A.2d 318 (App.Div.1988). As a result, mental or emotional distress, litigation costs and reputational harm do not generally qualify as "special grievances" necessary to sustain a malicious prosecution claim. *Id.* Here, plaintiff has not pointed to any evidence that she suffered anything beyond the burdens generally associated with tenure dismissal cases.

**IT IS FURTHER ORDERED** that plaintiff's complaint be, and hereby is, *DISMISSED WITH PREJUDICE.*