DIANE S. LIND AND HELEN SPRECHER, PLAINTIFFS-APPELLANTS, v. JOAN SCHMID, T/A DUTCHMAN'S RESTAURANT, AND JOAN SCHMID, INDIVIDUALLY, DEFENDANTS-RESPONDENTS.

Argued March 3, 1975—Decided April 30, 1975.

*Mr. M. Jefferson Davis* argued the cause for the appellants (*Messrs. Reiners and Davis,* attorneys).

*Mr. Peter J. Farabaugh* argued the cause for the respondents.

.The opinion of the Court was delivered by

SCHREIBER, J. This malicious prosecution suit arises out of a day at the seashore.

On July 7, 1971 the plaintiff Diane S. Lind, her 12-year-old son George, and her mother and father, the plaintiff Helen Sprecher and Henry Sprecher, all of whom lived in and about Philadelphia, decided to spend the day at Surf City, New Jersey. En route home at about 6:30 P.M. they stopped for dinner at the Dutchman's Restaurant in Mana-

hawkin. The proprietors were Joan Schmid, the defendant, and her husband Robert.

The four patrons were seated promptly and serviced by the waitress, Karen Hackett. After taking the orders, she placed bread, butter and four salads on the table, which were promptly eaten. Then came the entrees. Mrs. Lind and Mrs. Sprecher had broiled striped bass. Mr. Sprecher had weiner schnitzel, and George lobster tails. Mrs. Sprecher objected to the baked potato because it was raw and Miss Hackett replaced that with a mashed variety. When Mrs. Sprecher and Mrs. Lind had taken a bite or two of the fish, both exclaimed that the fish did not taste good and was inedible. Their complaint to the waitress led to Joan Schmid, who was acting as hostess, being summoned. Upon being advised of the complaint, Mrs. Schmid retorted that the fish was fresh and there could not be anything wrong with it. She was asked to sample the fish, but stated she was not hungry since she already had had her dinner, and walked away.

The plaintiffs, saying they did not propose to pay for food not eaten, asked waitress Hackett for the bill. She made out the check for all the ordered food. It totalled $14. Mr. Sprecher and George Lind had eaten their meals. Mrs. Sprecher took $6 from her husband, attached it to the bill, and, with her daughter Mrs. Lind, approached Mrs. Schmid.

Mrs. Sprecher and Mrs. Lind told Mrs. Schmid they would only pay for the food which had been eaten and gave her the bill and the $6, an amount they had calculated to be the correct sum. Mrs. Schmid replied that was not possible and she would have to call the police. Mrs. Sprecher retorted that was fine, bring the police. Mrs. Sprecher and Mrs. Lind were escorted to the bar where Mr. Schmid worked. Mrs. Schmid gave her husband the check and the $6. He telephoned the police. There mother and daughter waited for some 25 to 30 minutes, until Stafford Township Police Officer John Shapley arrived.

Officer Shapley drove Mrs. Schmid, Mrs. Sprecher and Mrs. Lind to the office of the Clerk of Long Beach Township. There Joan Schmid signed a complaint charging Helen Sprecher and Diane S. Lind with violation of *N. J. S. A.* 2A:170–47. The statute provides that any person who obtains food at a restaurant with intent to defraud the owner is a disorderly person. The Clerk fixed bail at $200 for each. Since Mr. Sprecher had only some $80, he returned to Philadelphia to acquire the balance. In the meantime Mrs. Sprecher and Mrs. Lind were escorted to and detained at the County Jail at Toms River. There they remained from 8:30 P.M. until 3:30 A.M. when Mr. Sprecher returned and bailed them out.

The municipal magistrate heard the matter six days later. At the trial Robert Schmid did not testify, but a James Stavish, a bartender at the restaurant, and a Joseph Stengel did. Stavish and Stengel said that they tasted the fish about 8:30 P.M. and that it was cold but suitable. Mrs. Schmid also tasted the fish on her return and asserted it was edible. Although the judge concluded that "the testimony is clear from what the mother and daughter said that the food wasn't fit to eat," and he made no factual findings to justify a conclusion that the defendants obtained the food with an intent to defraud the owner, he found both guilty because they should have paid for the food and sued the restaurant and they did not order "additional food."

On the trial *de novo* before the County Court conducted on the municipal court transcript the judge found that the cost of Henry Sprecher's and George Lind's meals had been paid, that the refusal to pay the balance of the bill was because the women truly believed the fish was inedible, and that the people had the money to pay for the food and did not try to "sneak out" without paying. The convictions were reversed because the State had "not met its burden of proof to show . . . that either one has been proven guilty of attempting to defraud this restaurant pursuant to the terms of 2A:170–47."

Thereafter Diane S. Lind and Helen Sprecher instituted this action for malicious prosecution against Joan Schmid, individually and trading as Dutchman's Restaurant. The defendant's motion for summary judgment was granted because the conviction in the municipal court, although subsequently reversed, was deemed to establish conclusively that probable cause for the complaint existed. The Appellate Division affirmed, and we granted certification. 67 *N. J.* 78 (1975).

The trial court and the Appellate Division relied on *Heyman v. Stein,* 96 *N. J. Super.* 586 (App. Div. 1967), certif. den. 52 *N. J.* 493 (1968), for the proposition that the conviction in the municipal court, even though reversed in the county court, conclusively established probable cause so that an action for malicious prosecution could not be maintained. The Appellate Division opined that this is "the law of this State."

In *Heyman v. Stein* the defendant asserted that while in the basement of her home she told the plaintiff's son, who was standing on a table, to leave. She turned off the lights. A few minutes later plaintiff rushed down into the basement, his arms extended to her throat. When he screamed he was going to break every bone in her body, she closed her eyes and put her hands to her ears. Plaintiff changed his mind and left. The police were called and defendant filed an informal charge in the municipal court of an attempted assault and battery. When the matter came on, the defendant at the direction of the magistrate signed a formal complaint. The matter was heard by a second magistrate who found the plaintiff guilty. The county court on a *de novo* hearing on the record acquitted the plaintiff.

Then followed the malicious prosecution action. The trial court dismissed the case on the ground that the conviction by the magistrate conclusively established the existence of probable cause unless the conviction was obtained by fraud, perjury, or other corrupt means. It relied on the rule found in 3 *Restatement, Torts,* § 667(1) at 421 (1938).

While the Appellate Division seemed to approve that principle (96 *N. J. Super.* at 590), it emphasized that in the case before it two municipal magistrates had found probable cause to exist, that there was evidence to justify that result, and concluded that there was "no reason to allow a third inquiry into the very same question." (*Id.* at 591).

It has generally been stated that malicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime. *Vladar v. Klopman,* 89 *N. J. L.* 575 (*E. & A.* 1916); *Shoemaker v. Shoemaker,* 11 *N. J. Super.* 471 (*App. Div.* 1951); *Toft v. Ketchum,* 18 *N. J.* 280, 287 (1955) (Jacobs, J. concurring). On the other hand, one who recklessly institutes criminal proceedings without any reasonable basis should be responsible for such irresponsible action. Development of the malicious prosecution cause of action as we know it today is the result of a balancing of these antithetical considerations. See *Winfield, Torts,* § 171 at 747 (*6th ed.* 1954); 1 *Harper and James, The Law of Torts,* § 4.2 at 301 (1956).

A malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff. *Prosser, Law of Torts,* § 119 at 835 (*4th ed.* 1971); *Evans v. Jersey Central Power, etc., Co.,* 119 *N. J. L.* 88 (*E. & A.* 1937). The plaintiff must establish each element. Upon failure to prove any one, the cause must fail. Each element is separable from the others, although evidence of one may be relevant with respect to another. For example, proof of lack of probable cause may be appropriate evidence from which to infer but not necessarily establish malice.

The essence of the cause of action is lack of probable cause, and the burden of proof rests on the plaintiff.

The plaintiff must establish a negative, namely, that probable cause did not exist.

The defendant contends that since reliance upon advice of counsel by the defendant at the time the complaint is signed constitutes a defense to a malicious prosecution cause of action, see *Weinstein v. Klitch,* 106 *N. J. L.* 408 (*E. & A.* 1929) and *Dombroski v. Metropolitan Life Ins. Co.,* 126 *N. J. L.* 545 (*E. & A.* 1941), a municipal magistrate's conviction is entitled to as much weight. The fallacy of this rationale is that it fails to recognize that the concept of probable cause in malicious prosecution is not fixed from one frame of reference. Obviously, the defendant did not and could not have acted in reliance upon the subsequent conviction in the municipal court.

Initially the defendant must have had probable cause to set the action in motion. The plaintiff must demonstrate that at the time *when* the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinarily prudent individual in believing that an offense had been committed. Was the state of facts such as to lead a person of ordinary prudence to belive on reasonable grounds the truth of the charge at the time it was made? *Mayflower Industries v. Thor Corp.,* 15 *N. J. Super.* 139, 152 (*Ch. Div.* 1951), aff'd, 9 *N. J.* 605 (1952); *Galafaro v. Kuenstler,* 53 *N. J. Super.* 379 (*App. Div.* 1958). In *Lane v. Pennsylvania R.R. Co.,* 78 *N. J. L.* 672, 674 (*E. & A.* 1910), the Court wrote:

> In cases of criminal prosecutions probable cause means reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the accused is guilty of the offence with which he is charged.

We are concerned here with the effect of a magistrate's conviction which is subsequently reversed. Most jurisdictions apparently follow the rule enunciated in 3 *Restatement, Torts,* § 667(1) at 421 (1938) that:

The conviction of the accused by a magistrate or trial court although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means.

See *Annot.,* "Conclusiveness, as evidence of probable cause in malicious prosecution action, of conviction as affected by the fact that it was reversed or set aside," 86 *A. L. R. 2d* 1090 (1962). This principle perforce must refer to the existence of probable cause demonstrated before the magistrate.

■ The Restatement Rule is apparently bottomed on the assumption that the magistrate has upon a full and fair trial proceeded to conviction predicated upon evidence that would convince a prudent and reasonable man of the guilt of the accused. Therefore there must have been probable cause for the criminal proceeding. But the difficulty with the rationale is that the assumption may not be true. If the magistrate erred as a matter of law, should the plaintiff be deprived of his cause of action? If that trial court had acted correctly there would have been an acquittal. Then the plaintiff would have been able to maintain the malicious prosecution suit. The inequity of a rule which in that situation bars the cause of action is obvious. The better principle is that the magistrate's conviction raises a rebuttable presumption of probable cause. The most recent opinion which has considered the issue has reached this result. *MacRae v. Brant,* 108 *N. H.* 77, 230 *A. 2d* 753 (1967). Other jurisdictions which are in accord are Alabama, *Johnston v. Byrd,* 279 *Ala.* 491, 187 *So. 2d* 246 (1966); Minnesota, *Skeffington v. Eylward,* 97 *Minn.* 244, 105 *N. W.* 638 (1906); Iowa, *Miller v. Runkle,* 137 *Iowa* 155, 114 *N. W.* 611 (1908); Nebraska, *Bechel v. Pacific Exp. Co.,* 65 *Neb.* 826, 91 *N. W.* 853 (1902); and New Mexico, *Vincioni v. Phelps Dodge Corp.,* 35 *N. M.* 81, 290 *P.* 319 (1930).

The justice of this rule is illustrated in *Nesmith v. Alford,* 318 *F. 2d* 110 (*5th Cir.* 1963). The plaintiffs, Dr. Nesmith and his wife, in 1960 took ten students to Montgomery, Ala-

bama, to study the use of the non-violent technique as a method of sociological change. While peaceably having lunch in a restaurant for blacks, the police entered and without any explanation arrested them. The next morning they were convicted in the municipal court of disorderly conduct. On an appeal to the Circuit Court, Mrs. Nesmith was acquitted but Dr. Nesmith was found guilty. He appealed to the Alabama Court of Appeals which reversed the conviction because of a defect in the complaint. The complaint was thereupon dismissed because a one year statute of limitations had run.

 Dr. and Mrs. Nesmith then instituted a suit for malicious prosecution against the responsible police officers. The Circuit Court in concluding that the intervening criminal convictions would not bar the action wrote:

> . . . In other words, when the facts — clear and uncontradicted as they are here — show without any doubt whatsoever that there was not a single basis for anyone charging either of these Plaintiffs with disorderly conduct provoking a breach of the peace, neither those facts nor the inferences to be drawn from them are changed in any degree by jury verdicts of guilty which ought never to have been returned had the Recorder's Court dismissed the charges on the completion of the prosecutor's case as the law so positively compelled. 318 *F*. 2*d* at 123.

An examination of what occurred in the proceedings before the magistrate must be made, as was done in *Heyman v. Stein, supra*. It may well be in a given case that a municipal magistrate's conclusions of guilt could reasonably have been reached. In that event, his findings should preclude the plaintiff's suit and the presumption of probable cause raised by the conviction, although reversed on appeal, would not have been rebutted. On the other hand, where the municipal magistrate erred as a matter of law, including a factual determination unsupported by substantial evidence, so that the conviction could not stand, or his factual findings negated probable cause, or the conviction was obtained by

fraud, perjury or other corrupt means, the conviction should be disregarded.

Where the facts are undisputed, the existence or nonexistence of probable cause is a question of law. *Prostick v. Vroom*, 129 *N. J. L.* 465 (*E. & A.* 1943). Factual disputes are to be resolved by the jury, but the finding of probable cause must be made on adequate instructions by the court. *Shoemaker v. Shoemaker, supra; Vladar v. Klopman, supra*. Analysis of what occurred before the magistrate and the effect thereof are questions for the court. It must resolve whether the magistrate's determination was based on evidence from which a reasonable inference of probable cause might be drawn. If not, it is to be disregarded. If it was, then the malicious prosecution suit should be dismissed. To re-try the issue of probable cause is unnecessary. *Heyman v. Stein, supra. Cf.* concurring opinion of Justice Jacobs in *Toft v. Ketchum, supra*, 18 *N. J.* 280, 288, where he indicates that it is unwarranted to allow relitigation by a plaintiff attorney of factual issues determined against him by a County Ethics and Grievance Committee to enable him to establish lack of probable cause in a malicious prosecution action.

Here the plaintiffs, Diane S. Lind and Helen Sprecher, were charged in a sworn complaint with having obtained food with an intent to defraud the owner. The municipal magistrate factually concluded that the food was not fit to eat and made no findings to justify a determination or even an inference that the plaintiffs intended to defraud the defendant. He apparently decided guilt on the irrelevant fact that plaintiffs did not order other food and conclusion that they should have paid for the inedible uneaten food and then instituted a suit. Under these circumstances, he could only legally determine that the plaintiffs were not guilty. In holding to the contrary he erred. His finding should be disregarded.

Accordingly, the judgment for the defendant is reversed and the matter remanded for trial.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.