NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1844
_____

DAMON CARNEY,

Appellant

v.

PENNSAUKEN TOWNSHIP POLICE DEPARTMENT;
CITY OF PENNSAUKEN; CVS PHARMACY, INC.;
JOHN DOES 1-10; OFFICER RICHARD NURTHEN, individually and
in his official capacity as a police officer; WENDY FREY, individually
and in her official capacity as an employee of CVS Pharmacy, Inc.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-11-cv-07366)
District Judge: Honorable Robert B. Kugler
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2015

Before: FISHER, JORDAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 23, 2015)
_____

OPINION*
_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Damon Carney challenges the District Court's entry of summary judgment against him. He specifically argues that probable cause did not exist to charge him with an attempt to unlawfully obtain possession of the drug Percocet through a forged prescription and, therefore, that the District Court incorrectly held that his malicious prosecution claim failed as a matter of law. His argument is unpersuasive, and we will affirm.

## I.    Background

On July 8, 2011, Carney presented two prescriptions to a CVS Pharmacy in Pennsauken, New Jersey. One prescription was for 30 tablets of Motrin and the other was for 8 tablets of Percocet. Both prescriptions were on forms issued by Cooper University Hospital in Camden, New Jersey. In addition, both prescriptions were computer-printed and indicated "Refills: 0 (Zero)," but they both had a mark that looked like a handwritten numeral "1" on a separate line used to designate refills.

Wanda Frey, the CVS Pharmacy technician who received the prescriptions, determined that the mark on the Percocet prescription was suspicious because, in her experience, prescriptions from hospitals never included refills.[1] After discussing her suspicion with the pharmacist on duty, Frey called Cooper University Hospital and learned that no refills were authorized on the prescriptions. The CVS pharmacist then instructed Frey to call the police, which she did.

_____

[1] Carney referred to Ms. Frey as "Wendy Frey" in his pleadings, but her deposition transcript refers to her as "Wanda Frey."

2

After Frey contacted the police, Officer Richard Nurthen arrived to investigate the matter. Frey showed Officer Nurthen the Percocet prescription and explained that it had been changed because the typed portion of the prescription indicated "zero" refills, but she believed someone had written a numeral "1" on a separate refill line. Frey also told Officer Nurthen that she had contacted the hospital and that hospital staff had informed her that the Percocet prescription did not include refills. Officer Nurthen took possession of the prescriptions and contacted the hospital on his own. He was informed that the Percocet prescription did not include any refills. When Carney returned to the CVS Pharmacy to pick up the prescriptions, Officer Nurthen – relying on his training, experience, observation of the prescription, and information that he obtained from Frey and the hospital – arrested him and charged him with, among other things, violating N.J. STAT. ANN. 2C:35-10.5(d), which makes it unlawful to attempt to obtain a prescription drug through forgery. The charges against Carney were subsequently dismissed by the prosecutor's office.

On December 20, 2011, Carney filed suit against Officer Nurthen, the City of Pennsauken, the Pennsauken Township Police Department, and CVS Pharmacy, Inc., alleging violations of his civil rights, and asserting that he incurred $6,000 in attorney's fees in defending against criminal charges filed against him. Carney subsequently filed an amended complaint which added Wanda Frey as a defendant and alleged new causes of action. Later, Carney was granted leave to amend his complaint a second time. The Second Amended Complaint asserted the following claims: (1) a claim for malicious prosecution with respect to Officer Nurthen; (2) a claim under 42 U.S.C. § 1983, pursuant

3

to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), asserted against Officer Nurthen, the City of Pennsauken, and the Pennsauken Township Police Department; and (3) a claim for malicious prosecution with respect to Wanda Frey and CVS Pharmacy, Inc. The District Court dismissed the malicious prosecution claim with respect to Wanda Frey and CVS Pharmacy, Inc., and Carney does not appeal that dismissal. Subsequently, the District Court granted summary judgment in favor of the remaining defendants as to all claims asserted against them.[2] Carney has timely appealed the entry of summary judgment.

## II.    Discussion[3]

As noted above, Carney argues that probable cause did not exist to charge him with an attempt to unlawfully obtain possession of Percocet through a forged prescription and that, as a result, the District Court incorrectly held that his malicious prosecution claim against Officer Nurthen, the City of Pennsauken, and the Pennsauken Township Police Department failed as a matter of law. His argument fails.[4]

To establish a malicious prosecution claim under section 1983, Carney was required to show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal

---

[2] Carney did not oppose the remaining defendants' motion for summary judgment as to the *Monell* claim, and he does not press it on appeal. Therefore, we need not address that claim.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise *de novo* review of the District Court's grant of summary judgment. *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004). Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[4] Because we conclude that Carney's claims were properly disposed of on the merits, we need not address the parties' arguments on qualified immunity.

proceeding ended in [Carney's] favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing [Carney] to justice; and (5) [Carney] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[5] *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

The only element of Carney's malicious prosecution claim disputed below was whether the proceeding was initiated without probable cause. Because the District Court entered summary judgment in the defendants' favor on that issue, it is the focus of Carney's appeal.

To determine whether Officer Nurthen and the other defendants had probable cause to arrest and initiate a prosecution against Carney, we look to the totality of the circumstances and rely on "the factual and practical considerations of everyday life on which reasonable and prudent men … act." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995). The facts must support a belief that there was a fair probability that Carney committed the crime at issue. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000).

---

[5] To the extent Carney asserts that he also brought a state law claim for malicious prosecution, that claim is similar to the federal law claim and requires a lack of probable cause. *See, e.g.*, *Lind v. Schmid*, 337 A.2d 365, 368 (N.J. 1975) ("A malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff.").

Carney advances two arguments in his attempt to establish that probable cause was lacking. First, he says that a genuine factual dispute exists as to whether the mark on the refill line that appears to be a numeral "1" is nothing more than a "smudge" and that such an inadvertent mark could not reasonably be construed as a forgery. (Carney's Br. at 17.) But that contention fails. Officer Nurthen was aware of sufficient facts at the time of the arrest to reasonably believe that Carney had altered the prescription form so that it permitted its holder to obtain "1" refill instead of "zero." Carney's contention that the mark – which looks remarkably like a handwritten numeral "1" – was actually a smudge does not create a genuine dispute of material fact as to whether Officer Nurthen reasonably believed at the time he arrested Carney that the mark constituted a forgery.

Second, Carney says that Officer Nurthen did not have probable cause to believe that Carney had the necessary mens rea to be charged with a violation of the New Jersey statute. But that contention too is unpersuasive. Officer Nurthen was aware of sufficient facts to reasonably believe that Carney presented the forged prescription to CVS Pharmacy employees with the intent to obtain Percocet in violation of N.J. STAT. ANN. 2C:35-10.5(d). Carney's assertion that he did not actually possess the necessary mens rea is irrelevant; all that matters for purposes of his civil claim is whether Officer Nurthen reasonably believed that he did. *See, e.g.*, *Zalaski v. City of Hartford*, 723 F.3d 382, 393-95 (2d Cir. 2013) (finding that, based on the totality of the circumstances, it was reasonable for a police officer to conclude that criminal defendants possessed the necessary mens rea to commit a crime). And the record clearly demonstrates the lack of any genuine factual dispute that Officer Nurthen's belief was reasonable. Indeed, it is

6

surprising and somewhat troubling that a malicious prosecution claim was even asserted on these facts and that Carney continued to pursue the claim on appeal.

### III.    Conclusion

For the reasons noted, we will affirm the judgment of the District Court.