**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3744-15T4

D.C.A.,

      Plaintiff-Appellant,

v.

M.J.A.,

      Defendant-Respondent.

_____

      Submitted May 31, 2017 — Decided November 2, 2017

      Before Judges Messano and Grall.

      On appeal from the Superior Court of New
      Jersey, Law Division, Morris County, Docket
      No. L-1026-15.

      Stelio G. Papadopoulo, attorney for
      appellant.

      Bevan, Mosca & Giuditta, PC, attorneys for
      respondent (John D. Coyle, of counsel and on
      the brief).

PER CURIAM

    In this civil action between former spouses on a complaint

and counterclaim alleging "malicious prosecution" and

"abuse/malicious use of process," the trial court granted

defendant's motion for summary judgment on plaintiff's claims and ordered plaintiff to narrow his "oppressive" discovery requests. Thereafter, by stipulation and agreement, defendant dismissed her counterclaim subject to reinstatement in the event of an appeal and remand.

Plaintiff appeals and challenges both rulings. We affirm the grant of summary judgment. Because there will be no remand, the discovery order is moot and we do not address it. Cf. In re Commitment of N.N., 146 N.J. 112, 124 (1996) (discussing circumstances warranting consideration of moot orders).

I.

Plaintiff's tort claims are based on defendant's filing and litigating a complaint seeking a final restraining order (FRO) pursuant to the Prevention of Domestic Violence Act (PDVA or the Act), N.J.S.A. 2C:25-17 to -35. In that action, defendant alleged two predicate acts of "domestic violence" as defined in N.J.S.A. 2C:25-19(a): stalking, N.J.S.A. 2C:12-10; and harassment, N.J.S.A. 2C:33-4.

After plaintiff followed defendant while she was driving, defendant obtained a temporary restraining order (TRO). She survived plaintiff's motion for dismissal at the close of her case on issuance of a final restraining order (FRO), but at the close of defendant's case, the judge of the Family Part

determined defendant did not establish all the elements of the predicate acts. He found defendant failed to prove the essential element of intent required for harassment, N.J.S.A. 2C:33-4, and the essential repeated acts required to establish the "course of conduct" for stalking, N.J.S.A. 2C:12-10.

In the course of his final decision, the judge made findings on elements of harassment and stalking defendant had established. Addressing the evidence presented during the extended multi-day hearing, including evidence on the history of domestic violence in this family, the judge explained: "Putting all those things together, I think I would have to make a finding that any plaintiff in a similar situation would reasonably be seriously annoyed and alarmed by seeing [her husband] behind her." The judge found defendant "truthful," believed "she certainly was upset" and that she believed her husband was following her and was in a "panic." N.J.S.A. 2C:33-4; see Cesare v. Cesare, 154 N.J. 394, 414-15 (1998) (requiring an assessment of annoyance and alarm essential to harassment from the perspective of the complainant and the circumstances of the relationship); accord State v. Hoffman, 149 N.J. 564, 585 (1997); cf. N.J.S.A. 2C:12-10; State v. Gandhi, 201 N.J. 161, 187 (2010) (noting that stalking requires a course of conduct that would cause a reasonable person fear).

Without a predicate act, the judge was required to dismiss and dissolve the TRO and deny an FRO. Nevertheless, the judge noted he would not have issued an FRO because he did not think it was necessary and was concerned defendant "might" use the FRO "to perhaps, gain an advantage in the custody relationship."

After obtaining a favorable result in the PDVA action, plaintiff commenced this civil action contending defendant sought the protection of the PDVA maliciously and without basis.

II.

A.

"Our review of a summary judgment ruling is de novo." Conley v. Guerrero, 228 N.J. 339, 346 (2017). "[W]e apply the same standard governing the trial court — we view the evidence in the light most favorable to the non-moving party." Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349 (2016) (quoting Qian v. Toll Bros. Inc., 223 N.J. 124, 134-35 (2015)). To prevail, the moving party must show entitlement to judgment "as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). A defendant can prevail on summary judgment in action alleging a malicious misuse or abuse of process by establishing that plaintiff cannot, as a matter of law, prove an essential element of the claim. See, e.g., Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 399-400 (2009).

The facts discernible from the evidential materials submitted on the motion for summary judgment are stated here in the light most favorable to plaintiff.[1]  This action under the PDVA was not the parties' first, and they were both represented by counsel.  About a year and a half before this complaint, defendant filed a complaint under the PDVA that she dismissed because she and plaintiff agreed to restraints outside the PDVA.[2]  While plaintiff disputed many of the allegations of prior domestic violence, he admitted he had pushed defendant into a table in the past.

When defendant filed this complaint in 2014, the parties were divorced.  The divorce did not end amicably.  Pursuant to their decree, neither former spouse is to know where the other lives.  In addition, plaintiff's visitations with their three

---

[1] The materials submitted in support of and opposition to the summary judgment include the domestic violence complaints, a post-judgment order entered in the parties' divorce case, and the pleadings and portions of the transcript of the testimony and rulings in the final hearing on the PDVA-action underlying this tort action.

[2] In an amended complaint filed after defendant had an attorney, defendant set forth a history of domestic violence commencing in 1998.

A-3744-15T4

children are supervised at a center for evaluation and counseling (CEC).[3]

The incident that led defendant to file the complaint under the PDVA that gave rise to this tort action occurred after defendant picked their children up from a supervised visit with their father that ended at 5:30 on an evening in mid-November. Consistent with their usual procedure for transfer of the children following visitation, defendant left the CEC with the children and plaintiff delayed his departure. When plaintiff left, he was going to his workplace to check his schedule for the next day, and he took the same road in the same direction defendant was travelling. There was no evidence that defendant knew or had reason to suspect that plaintiff was going to his workplace that night.

There is no dispute that plaintiff drove behind defendant's car in the same lane for at least a mile. Plaintiff was aware that he was driving behind defendant's car with only a few cars between them. Defendant saw the headlights of plaintiff's car behind her. She recognized them because, to her, they were unusual and looked "alien," like the lights of a space ship.

---

[3] The record on appeal does not include the judgment of divorce, but defendant referred to the "decree" in her initial complaint and the information about its terms was undisputed.

6                                                                 A-3744-15T4

Alarmed, she drove into a parking lot in front of a roadside restaurant. Plaintiff acknowledged seeing defendant enter the parking lot and driving past her car. By defendant's account, plaintiff looked into her car as he passed and made a face that upset her and the children. Plaintiff denied looking into the car.

After plaintiff had passed the lot, defendant resumed her course of travel on the same road. Plaintiff later saw defendant's car in a lane for left turns and saw her make that turn. After she turned, defendant saw a car with the same alien-type headlights as plaintiff's behind her. She believed plaintiff was driving that car and was trying to follow her and the children home, and she was alarmed. Accordingly, she went to a nearby firehouse for help and obtained her TRO that night.

By plaintiff's account, which he supported with GPS tracking records and testimony from a co-worker introduced at the hearing, he had not turned left and followed defendant. Instead, he continued to his workplace.

C.

General principles governing claims of malicious use and abuse of process inform our review of this summary judgment motion. Our courts consider these claims "with great caution because of their capacity to chill resort to our courts by

7

persons who believe that they have a criminal complaint or civil claim against another." LoBiondo v. Schwartz, 199 N.J. 62, 89 (2009).

That cautious approach is especially appropriate when the civil action is commenced under PDVA. The PDVA is "particularly solicitous of victims of domestic violence"; the purpose of the "Act is to assure the victims of domestic violence 'the maximum protection from abuse the law can provide.'" Hoffman, supra, 149 N.J. at 584 (quoting N.J.S.A. 2C:25-18). The Act "effectuates the notion that the victim of domestic violence is entitled to be left alone. To be left alone is, in essence, the basic protection the law seeks to assure these victims." Ibid.

Recognizing "that in the area of domestic violence, as in some other areas in our law, some people may attempt to use the process as a sword rather than as a shield," the Court has directed the judges of the Family Part to serve as gatekeepers to avoid such abuse. Id. at 586; accord Cesare v. Cesare, 154 N.J. 394, 416 (1998). As findings of facts quoted above demonstrate, the Family Part judge who decided this case mentioned the potential for abuse.

Given the underlying purpose of the PDVA and the gatekeeping role of judges who decide these cases, an expansive reading of decisional law addressing these common law torts

would be highly inappropriate. In this context where emotions commonly run high, the potential for an unsuccessful applicant for an FRO being "forced to defend against one of these claims based on little more than having filed, and lost, in a court proceeding as to which the original defendant harbors resentment and anger" is as apparent as the likelihood that such tort litigation will exacerbate existing hostilities. LoBiondo, supra, 199 N.J. at 91. In this case, there is "little more" than the fact that plaintiff ultimately prevailed in the action under the PDVA to support plaintiff's tort claims.

(1)

Plaintiff's claim of malicious prosecution fails as a matter of law, because malicious prosecution refers to actions seeking redress from malicious pursuit of criminal prosecutions. LoBiondo, supra, 199 N.J. at 89-90. But an action under the PDVA is not a criminal prosecution. N.J.S.A. 2C:25-19; N.J.S.A. 2C:25-28 to -29; see J.D. v. M.D.F., 207 N.J. 458, 474-75 (2011) (discussing the distinction between actions under the PDVA and criminal prosecutions and the varying standards of proof). Accordingly, defendant was entitled to summary judgment on this claim.

A-3744-15T4

(2)

To establish the elements of malicious use of civil process plaintiff had to show that defendant (1) commenced the PDVA action; (2) was motivated by malice; (3) did not have probable cause when she commenced and continued the action; (4) failed to establish her claim; and (5) caused plaintiff to suffer a special grievance as a consequence of her filing the complaint under the PDVA. See LoBiondo, supra, 199 N.J. at 90.

The trial court concluded plaintiff could not establish defendant lacked probable cause, because the judge of the Family Part had determined she did when he denied defendant's motion for involuntary dismissal. Plaintiff objects to this use of issue preclusion on several grounds, but we are free to and opt to affirm the grant of summary judgment based on plaintiff's inability to establish probable cause for a different reason. See Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175 (1968) (noting the commonality and propriety of affirming a valid determination entered on an erroneous basis).[4]

_____

[4] Reliance on issue preclusion in this context is a matter of some complexity, and we do not have a full record of the testimony presented during the hearing on the FRO. See Lind v. Schmid, 67 N.J. 255, 265-66 (1975) (discussing findings of probable cause made in the litigation giving rise to a subsequent claim of malicious prosecution and concluding that

(footnoted continued next page)

Plaintiff could not, as a matter of law, establish that defendant did not have probable cause. In this context, "[p]robable cause is a matter of law to be determined by the court, and it is only submitted to the jury if the facts giving rise to probable cause are themselves in dispute." LoBiondo, supra, 199 N.J. at 93. In determining whether probable cause exists, courts consider the totality of the circumstances known to the party at the time, not facts learned later. Brunson, supra, 199 N.J. at 398.

As to this element of his cause of action, plaintiff had to "establish a negative, namely, that probable cause did not exist." Lind v. Schmid, 67 N.J. 255, 263 (1975). Stated differently, plaintiff had to "demonstrate that . . . when the defendant put the [PDVA] proceedings in motion the circumstances were such as not to warrant an ordinarily prudent individual in believing that [a predicate] offense had been committed." Ibid. (emphasis in original).

---

(footnoted continued)
some are and some are not determinative of "probable cause" in a subsequent action on malicious prosecution or malicious use of process, which depends upon the adequacy of the court's pertinent findings). There is no reason to ponder the question of issue preclusion here, because this case can be resolved by considering the record presented to the trial court on summary judgment motion in the light most favorable to plaintiff.

Here, the totality of circumstances known and knowable to defendant were undisputed. Plaintiff had used physical force against defendant in the past, and the parties were subject to a judgment that precluded each of them from knowing where the other lived. This incident occurred in the evening near suppertime and after the children spent an hour of supervised visitation with their father — a time when plaintiff would expect defendant to be bringing the children home. Plaintiff drove behind defendant for about a mile, and he passed near her car when she pulled into parking lot to avoid his following her.

After plaintiff passed, defendant continued on that road and took a left turn onto another street, where she noticed headlights that looked like plaintiff's unusual headlights behind her on that street. Plaintiff saw her make that turn.

In the totality of these circumstances, an ordinarily prudent individual would be warranted in believing that plaintiff was following, harassing and stalking defendant. Harassment may be established by proof of a "course of alarming conduct" undertaken "to alarm or seriously annoy" another, N.J.S.A. 2C:33-4(c). And, stalking may be established by proof of a "course of conduct" that includes knowingly maintaining physical proximity under circumstances that "would cause a reasonable person to fear" for his or her safety or the safety

of another, N.J.S.A. 2C:12-10(a)(1), (b). An ordinarily prudent person aware of the totality of these circumstances would have reason to believe plaintiff followed on the first and second streets to, at least, annoy her, and on the circumstances known at the time would have no reason to think plaintiff was simply driving to his workplace to check on his schedule for the next day.

We reject plaintiff's claim that plaintiff's exculpatory explanation eradicated probable cause and required defendant to withdraw her PDVA-complaint as soon as she heard it. Plaintiff's explanation did not cover his decision to drive behind defendant's car until she disrupted her travel and opted to retreat to a parking lot off the road. Thus, his explanation did not obliterate the foundation for defendant's complaint.

As the undisputed facts established probable cause as a matter of law, there was no question for the jury to resolve and defendant was entitled to summary judgment on plaintiff's claim of malicious use of process.

(3)

Defendant was also entitled to summary judgment as a matter of law on plaintiff's claim for malicious abuse of process. An "action for abuse of process lies for the improper, unwarranted, and perverted use of process after it has been issued." Earl v.

Winne, 14 N.J. 119, 128 (1953) (emphasis added) (quoting Ash v. Cohn, 119 N.J.L. 54, 58 (E. & A. 1937)). "[P]rocess has not been abused unless after its issuance the defendant reveals an ulterior purpose [the defendant] had in securing it by committing 'further acts' whereby [the defendant] demonstrably uses the process as a means to coerce or oppress the plaintiff." Tedards v. Auty, 232 N.J. Super. 541, 550 (App. Div. 1989) (quoting Gambocz v. Apel, 102 N.J. Super. 123, 130-31 (App. Div.), certif. denied, 52 N.J. 485 (1968)).

The only process issued in this case was the TRO. The TRO addressed visitation, contact between plaintiff and defendant and plaintiff's possession of a weapon. As to visitation, the TRO incorporates the arrangement already provided in the judgment of divorce; the TRO changed nothing.[5] Similarly, the limitations on contact between the parties included in the TRO are no more burdensome than those provided in the judgment of divorce, which precludes each party from knowing where the other resides.

The prohibition against possession of weapons included in the TRO is the only significant change effectuated by the TRO,

---

[5] Although the Family Part judge was concerned that defendant might use an FRO in furtherance of an ulterior purpose related to custody, the TRO was the only process issued and it was not used to alter custody or parenting time.

14                                                      A-3744-15T4

and that temporary restriction was dissolved at the conclusion of the hearing on the FRO. Plaintiff contends that because he could not carry a weapon, he lost the opportunity to earn about $20,000 overtime pay while the TRO was in place pending conclusions of the hearing on the FRO.

Granting that plaintiff established economic harm as a consequence of entry of the TRO, there was no evidence that would permit a jury to find that defendant sought a TRO with the "ulterior purpose" of reducing plaintiff's income. There is nothing in the record that suggests she had that purpose, and because divorced spouses share the responsibility of supporting their children, Pascale v. Pascale, 140 N.J. 583, 593 (1995), it would not be reasonable to infer that defendant, the custodial parent, sought a TRO with the purpose of diminishing plaintiff's income. In the absence of any evidence to the contrary, the economic ramifications of the TRO are more reasonably viewed as an undesirable and unintended consequence of the TRO than they are viewed as the malicious motive or the ulterior purpose actuating defendant's pursuit of an order requiring plaintiff to leave her alone. Accordingly, defendant was also entitled to summary judgment on the count of plaintiff's complaint alleging abuse of process.

A-3744-15T4

Plaintiff presents several arguments that do not require discussion given our disposition of the case. R. 2:11-3(e)(1)(E). He claims the trial court erred by: relying on issue preclusion; applying the wrong legal standard in granting judgment on malicious abuse of process; granting judgment on abuse of process cause without notice and opportunity to be heard; granting judgment on abuse of process without an adequate explication of findings and conclusions; overlooking defendant's failure to provide a statement of material facts; and finding absence of malice when defendant had not raised the point.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3744-15T4