**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3438-23

RONALD L. DAUGHERTY,

    Plaintiff-Appellant,

v.

ELIZABETH BORBOLLA,
ANY GARMENT LLC,
RICHARD J. ABRAHAMSEN,
ABRAHAMSEN LAW FIRM and
ABRAHAMSENGRANT LLC,

    Defendants-Respondents.

_____

Submitted May 13, 2025 – Decided June 11, 2025

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2179-21.

Salmon, Ricchezza, Singer & Turchi LLP, attorneys for appellant (Ronald L. Daugherty, on the briefs).

Abrahamsengrant, LLC, attorneys for respondents (Richard J. Abrahamsen, on the brief).

PER CURIAM

Plaintiff Ronald Daugherty appeals from a May 24, 2024 Law Division order granting summary judgment to defendants, Elizabeth Borbolla, Any Garment LLC, Richard Abrahamsen, Abrahamsen Law Firm, and Abrahamsengrant, LLC (collectively "defendants"). We affirm.

I.

We glean the salient facts from the record and our unpublished opinion in Any Garment Union, LLC. et al. v. Dry Clean Express I, LLC, et al., No. A-3169-20 (App. Div. Oct. 27, 2022) (slip op. at 1-39).

In February of 2018, Borbolla agreed to purchase Any Garment Cleaner, a dry-cleaning and laundry business, from Dry Clean Express I, LLC ("DCE"). Id. at 2. The initial purchase terms stated Borbolla would remit a $100,000 deposit, with the remaining balance due at closing. Id. at 3. DCE retained Daugherty, an attorney, to negotiate with Borbolla in the drafting of the asset purchase agreement. Borbolla remitted the $100,000 deposit to be held in escrow. Id. at 5. Borbolla created Any Garment Union, LLC, and signed the asset purchase agreement on its behalf with DCE. Ibid.

Borbolla had title and judgment searches conducted which "revealed liens and encumbrance affecting the marketability of title . . . ." Id. at 6. In addition to uncovering two judgments against the former owner of the dry-cleaning store,

CHM Dry Cleaning Services, LLC ("CHM"), the search also uncovered six judgments against Carlos Marroquin, who was the principal of CHM, including one obtained by Green Lago, LLC ("Green Lago") in the amount of $542,250. Id. at 5-6. Borbolla raised concerns over the marketability of the title and sought clarification on the liens and judgments against Marroquin. Id. at 6-7. In response, Daugherty stated Borbolla's requests were "ridiculous," and insisted "[t]he equipment and business ha[d] no liens on them," nor did Marroquin have anything to do with the sale between Borbolla and DCE. Id. at 8. Additionally, Daugherty opined "there [were] no risks" with the sale. Ibid.

The parties failed to resolve the issue of marketability. As a result, the sale did not close, and the seller terminated the agreement. Borbolla's attorney contacted the principal and agent of the broker who was handling the transaction and demanded the return of the $100,000 deposit, who responded by stating "the funds were released." Id. at 8-9.

Subsequently, on November 19, 2018, defendants filed the original action[1] against Daugherty and several other defendants, raising numerous claims centered on the failure to return the deposit. The claims against Daugherty

---

[1] Any Garment Union LLC, et al. v. Dry Clean Express I, LLC, et al., Docket No. UNN-L-4376-18.

alleged the following: constructive trust; unjust enrichment; civil conspiracy to commit fraud; aiding and abetting fraud; and violations of the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1 to -62 ("RICO"). See generally ibid. In May 2021, the trial court granted Daugherty and the other defendants' motion for summary judgment, and the case was dismissed. Id. at 11-12. An appeal followed, and on October 27, 2022, we affirmed in part and reversed and remanded in part. Id. at 2.

We affirmed the dismissal of multiple claims against Daugherty but reversed the trial court's decision dismissing the claims for civil conspiracy to commit fraud and aiding and abetting. Id. at 37-39. We found there were "material disputed facts as to whether DCE[], [and its principal] . . . intentionally made material misrepresentations or omissions," and that there was "also evidence that these parties acted in concert and split the deposit amongst themselves." Id. at 32. Moreover, that there was a "genuine factual issue as to whether . . . Daugherty participated in th[e] alleged fraud," because "[p]laintiffs have presented evidence that . . . Daugherty represented Marroquin and [DCE's principal] during the 2015 Green Lago litigation and thus knew about the $542,250 judgment entered against Marroquin." Ibid. Additionally, we stated that "judgment may have affected the marketability of the [dry-cleaning] store

and its assets." Ibid. Further, we pointed out plaintiff's contention that "Daugherty did not disclose the judgment or provide information regarding the litigation when requested to do so," and that Daugherty had sent a series of emails insisting "there were 'no open issues,' or 'liens or encumbrances' affecting marketability, and repeatedly pressured plaintiffs to close on transaction." Id. at 32-33.

While the original action was on appeal, Daugherty filed this action against defendants, followed by an amended complaint. The amended complaint alleged the following: fraud; intentional infliction of emotional distress; negligent infliction of emotional distress; abuse of process; and malicious prosecution.

After discovery ended, defendants moved for summary judgment, which was denied by the original motion judge. The judge reasoned there was a genuine dispute to the material fact of "whether [p]laintiff can prove malice and otherwise defeat the litigation privilege as to written comments and oral representations to the [c]ourt" in the original action.

The case was subsequently assigned to a new judge, and defendants refiled their motion for summary judgment. In support of their motion, defendants argued, in pertinent part, the filing of the original complaint and the arguments

5

made in open court in support of it were "absolutely privileged," by the litigation privilege.

On May 24, 2024, the court held a hearing on defendants' motion. Daugherty argued his claim fell under an exception to the litigation privilege, pursuant to Savage v. Stover, 86 N.J.L. 478 (E. & A. 1914), holding the litigation privilege does not protect interferences between a client and counsel. In an oral decision, the court granted defendants' motion, dismissing Daugherty's complaint with prejudice. The court rejected Daugherty's Savage argument, finding that in accordance with the holdings in Hawkins v. Harris, 141 N.J. 207 (1995), and Loigman v. Twp. Comm. of Middletown, 185 N.J. 566 (2006), the litigation privilege applied, thereby creating absolute immunity against Daugherty's claims.

This appeal followed.

II.

We review the trial court's grant or denial of a motion for summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and

6

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists . . . [we] 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (second alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "'When no issue of fact exists, and only a question of law remains, [appellate courts] afford[] no special deference to the legal determinations of the trial court.'" Boyle v. Huff, 257 N.J. 468, 477 (2024) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

III.

On appeal, Daugherty argues the trial court erred in holding that the litigation privilege was an absolute bar to his claims and in determining that summary judgment was appropriate for his claims of malicious prosecution and abuse of process.

The litigation privilege applies to "'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have

7 <span>A-3438-23</span>

some connection or logical relation to the action.'" Hawkins, 141 N.J. at 216 (quoting Silberg v. Anderson, P.2d 365, 369 (Cal. 1990)). As our Court explained, "lawyers and litigants must 'be permitted to speak and write freely without the restraint of fear of an ensuing defamation action.'" Loigman, 185 N.J. at 580 (quoting Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957)). The privilege applies not only to defamation claims, but to "a host of other tort-related claims." Id. at 583.

The privilege is not limited to statements made in a courtroom but applies "to all statements made 'in connection with' a judicial proceeding . . . ." Williams v. Kenney, 379 N.J. Super. 118, 134 (App. Div. 2005) (quoting Hawkins, 141 N.J. at 216). The litigation privilege does not reach the tort of malicious prosecution or malicious use of process; however, it does apply to abuse of process claims. Baglini v. Lauletta, 338 N.J. Super. 282, 297-98 (App. Div. 2001) (citations omitted).

Daugherty contends defendants' claims in the original action "were for illegitimate reasons . . . and with the ulterior motive of having [p]laintiff precluded from representing the other parties in the [o]riginal [c]omplaint by raising a conflict-of-interest argument based upon [p]laintiff's purported involvement in the RICO activities." Additionally, Daugherty asserts the

litigation privilege does not extend to Borbolla because she is a party to the action, not an attorney, arguing that allowing such "would wreak havoc upon the court system," because "parties would no longer face possible perjury charges for lying in [c]ourt or submitting false affidavits." Moreover, Daugherty maintains the claims against defendants are based upon defendants' false claims, which had no basis in fact because he was not involved in the business transaction that triggered the RICO claim. We are not persuaded by Daugherty's argument.

Because all of the requirements set forth in Hawkins are met, there is no genuine dispute to the material fact that the litigation privilege provides absolute immunity against all of Daugherty's claims except for the claim of malicious prosecution. See Baglini, 338 N.J. Super. at 297 ("The one tort excepted from the reach of litigation privilege is malicious prosecution, or malicious use of process.") (citations omitted). First, Daugherty filed this complaint in response to defendants filing the original action, therefore the statements were part of a judicial proceeding. See Citizens State Bank of N.J. v. Libertelli, 215 N.J. Super. 190, 197 (App. Div. 1987) (observing the filing of a complaint is part of the judicial proceedings covered by the privilege) (citations omitted). Second, contrary to Daugherty's argument, the protections extend to all defendants since

Borbolla and her attorney are "litigants, or other participants" in the action. Third, the statements and communications were contained in the complaint and made during oral argument, as such they were made to achieve the object of the original action. Lastly, the statements and communications that were made have a connection or logical relation to the original action since it is the complaint itself and the oral arguments made in support of the motion for summary judgment in the original action that gave rise to this action.

Additionally, Daugherty's reliance on Savage v. Stover is misplaced. Savage involved a libel suit, where the defendant, an attorney, sent a letter to opposing counsel, in part disparaging opposing counsel's client. 86 N.J.L. at 479. Although the letter did contain statements regarding two pending cases, our Supreme Court found the privilege did not extend to the portions of the letter admonishing the client. Id. at 480. The Court further stated, "[t]he burden of showing privilege is on the defendant, and if he sustains it, the plaintiff may still hold him liable by showing express malice." Ibid. (citing Fahr v. Hayes, 50 N.J.L. 275, 280 (E. & A. 1888) ("[E]xpress malice, in this connection, is meant some motive, actuating the defendant, different from that which prima facie rendered the communication privileged, and being a motive contrary to good morals.")). Here, Daugherty cannot show express malice in order for this

communication to fall under an exception to the litigation privilege.  Daugherty's assertion that allowing the litigation privilege to extend protection to the parties would "wreak havoc upon the court system," is belied as the privilege does not "protect a witness or party who testifies falsely from a perjury prosecution," and "[r]emedies for perjury, slander, and the like committed during judicial proceedings are left to the discipline of the courts, the bar association, and the state."  Hawkins, 141 N.J. at 215 (citations omitted).

IV.

Daugherty also claims the court erred in dismissing the malicious prosecution count.  A claim for malicious prosecution requires plaintiff to prove the following elements:  "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff."  LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009) (citing Lind v. Schmid, 67 N.J. 255, 262 (1975)).  Each element must be proven and the failure to show any one of the elements "is fatal" to the claim.  Ibid.

Daugherty's claim for malicious prosecution fails because Daugherty cannot satisfy each of the elements set forth in LoBiondo.  Daugherty cannot satisfy the second or third elements because he has not shown defendants' action

of filing their claims was motivated by malice, nor that it lacked probable cause. Malice has been "defined as the 'intentional doing of a wrongful act without just cause of excuse,'" legal malice "consists of the doing of the wrongful act in utter disregard of what the actor knew to his duty, to the injury of another." Id. at 93-94 (citations omitted). Our courts have "permitted malice to be inferred from a finding that a defendant has neither probable cause nor a reasonable belief in probable cause." Id. at 94.

Here, the second element cannot be shown because defendants did not file the original action with malice. That action was filed for the purpose of having Borbolla's $100,000 deposit returned, and alleged Daugherty participated in civil fraud, or aided and abetted in the failed return of the deposit. Additionally, the third element cannot be met because there was probable cause for defendants to pursue the original action. Although Daugherty argues he did not take part in the business transaction which gave rise to that action, the record shows otherwise as Daugherty represented DCE, to some extent, in the sale of the dry-cleaning business. The sale of the dry-cleaning business fell through because the title search revealed liens and judgments against CHM and Marroquin. We found evidence of fraud was presented relating to the whereabouts and dissipation of the $100,000 deposit, and that there was a genuine issue of

material fact as to whether Daugherty participated in the alleged fraud. See Any Garment Union LLC, slip op. at 32-33.

As to the fourth element, according to defendants, the original action was terminated with a settlement where defendants returned the $100,000 deposit to Borbolla. However, Daugherty asserts he never settled any of the claims. Although it is unclear whether Daugherty was part of the settlement, Daugherty cannot meet the second or third element pursuant to LoBiondo, which is fatal to his claim.

To the extent we have not specifically addressed any other contentions raised by Daugherty, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division